FILED
08 SEP 10 PM 3:42
CLERK, U.S.
BANKRUPTCY COURT
TOLEDO, OHIO

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

Kevin W. Baker
and
Tracee J. Baker

    Debtor(s)

**JUDGE RICHARD L. SPEER**

Case No. 07-35228

## DECISION AND ORDER

This cause comes before the Court on the Objection of the Creditor, Wells Fargo Financial Services, to Confirmation of the Debtors' Amended Plan of Reorganization. (Doc. No. 28). Later, in support of its Objection, the Creditor filed a Memorandum in Support. (Doc. No. 45). At the Hearing held on the Creditor's Objection, the Court continued, until further order, the matter of confirmation so as to afford the Parties the opportunity to submit briefs in support of their respective positions. (Doc. No. 47). No such materials, however, were filed by either of the Parties within the time frame allowed by the Court. As such, this matter is now ripe for decision based solely on the materials already before the Court. Based upon a review of these materials, the Court finds, for the reasons now explained, that the Creditor's Objection to Confirmation of the Debtors' Amended Plan of Reorganization should be Sustained.

## FACTS

On December 27, 2004, the Debtors, Kevin and Tracee Baker (hereinafter the "Debtors"), executed a mortgage in favor of the Creditor, Wells Fargo Financial Services. The mortgage was provided to secure a note executed between the Debtors and Wells Fargo Financial Services (hereinafter "Creditor") in the amount of $274,557.78. The security set forth in the mortgage provided that it extended to two parcels of real property located in Wood County, Ohio and "which

Kevin & Tracee Baker
Case No. 07-35228

ha[ve] the address of 11750 ECKEL JUNCTION ROAD & 208 WEST 7TH ST." (Claim's Register 4-1). The legal description attached to the mortgage, however, only described the latter parcel of property. *Id.*

On November 30, 2007, the Debtors filed a petition in this Court for relief under Chapter 13 of the United States Bankruptcy Code. (Doc. No. 1). At the time they filed their petition, the Debtors resided in the property described as 11750 Eckel Junction Road. At this time, the Debtors also no longer had an interest in the property listed in the Creditor's mortgage as 208 West 7th Street. The Creditor then filed a proof of claim, later amended, which set forth a secured claim in the amount of $198,229.25, with an arrearage of $4,229.00. (Claim's Register 4-1, 4-2). No objection to the Creditor's proof of claim was filed.

After the Creditor filed its proof of claim, the Debtor submitted an amended plan of reorganization. In their amended plan, the Debtors proposed to treat the Creditor as a secured claimant up to the value of their residence, $150,000.00, with the remainder of the Creditor's claim being treated as unsecured. As set forth in paragraph 13 of the Debtors' amended plan:

13. Other provisions:

The secured claim of the Wells Fargo Financial will be modified pursuant to Section 1322 (b)(2) of the Bankruptcy Code as follows:

> A. Wells Fargo Financial shall retain a first mortgage lien on the real property of the Debtors located at 11750 Eckel Junction Road, Perrysburg, OH 43551 only to the extent of $150,000.00. Payments made after the commencement of this proceeding shall be applied to amortize this indebtedness. The balance of the claim, which arose from the previous sale of real estate located at 208 West Seventh Street, Perrysburg, OH 43551, which, was sold on March 16, 2007, shall be an unsecured claim that will be paid pro-rata with the other unsecured creditors[.]

Page 2

Kevin & Tracee Baker
Case No. 07-35228

(Doc. No. 24). Based upon this provision, the Creditor filed its objection to the Debtors' proposed plan of reorganization, taking the position that the Debtors are impermissibly seeking to treat its claim as partially unsecured. (Doc. No. 28).

## DISCUSSION

Before this Court is the Creditor's Objection to Confirmation of the Debtors' proposed plan of reorganization. Pursuant to 28 U.S.C. § 157(b)(2)(L), matters concerning plan confirmation are deemed to be "core proceedings" over which this Court has jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

In this matter, the Debtors have sought relief under Chapter 13 of the United States Bankruptcy Code. A bankruptcy case commenced under Chapter 13 affords a debtor the opportunity to retain their nonexempt property while reorganizing their financial affairs under the protections of the bankruptcy court. The reorganization of a debtor's financial affairs is accomplished by means of a plan filed by a debtor and then confirmed by the court. 11 U.S.C. § 1321 (filing of plan); § 1325 (confirmation of plan). At the completion of a Chapter 13 plan of reorganization, the debtor is entitled to the entry of an order of discharge. 11 U.S.C. § 1328(a).

Any plan of reorganization filed by a debtor must comply with the requirements of § 1322, captioned "Contents of plan." A plan that does not comply with § 1322 cannot be confirmed. 11 U.S.C. § 1325(a)(1). Section 1322 provides for both mandatory and permissive contents. The mandatory contents of a plan of reorganization are contained in subsection (a) of § 1322; the permissive contents of a plan are set forth in subsection (b). At issue in this matter is the Debtors' compliance with § 1322(b)(2), which permits a debtor to modify the rights of claim holders, both secured and unsecured.

Page 3

Kevin & Tracee Baker
Case No. 07-35228

Section 1322(b)(2) provides:

> (b) Subject to subsections (a) and (c) of this section, the plan may–
>
>> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

By way of its objection to confirmation, the Creditor takes the position that paragraph 13 of the Debtors' amended plan effectuates an impermissible modification of its rights under this section. For this position, the Creditor cites to the particular language of this provision – often referred to as the antimodification clause – which prohibits a Chapter 13 debtor from modifying the rights of any creditor whose claim is secured only by a security interest in real property which is the debtor's principal residence.

As an overall matter, § 1322(b)(2) affords a debtor the ability to rewrite the terms of a contract with creditors, both secured and unsecured, concerning a variety of matters. *In re Anderson*, 3 B.R. 160, 162 (Bankr. S.D.Cal.1980). *See also In re Simmons*, 78 B.R. 300 (Bankr. D.Kan.1987) (modify, as used in section 1322(b)(2), means to make basic or important changes or to change in kind, degree, or amount). This power to modify a creditor's claim is broad and may include matters such as the amount and the timing of payments due on a claim. *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 477 (6th Cir. B.A.P. 1998). Relevant here, a debtor's ability to modify a claim under § 1322(b)(2) is often used in conjunction with § 506(a) which permits a debtor to bifurcate an undersecured claim into its constituent secured and unsecured components based upon the valuation of the secured property.

Once bifurcated, a debtor can then treat differently what are now two separate claims, often allowing a debtor to retain collateral at a cost much lower than the full value of the creditor's claim

Page 4

Kevin & Tracee Baker
Case No. 07-35228

given that unsecured claims are often not paid in full through a debtor's plan of reorganization. *See* 11 U.S.C. § 1325(a)(4) (distribution to unsecured creditors under a debtor's Chapter 13 plan cannot be less than distribution under Chapter 7). Additionally, once the claim is bifurcated, the Chapter 13 debtor can normally strip the creditor's lien down to its secured value – in essence, allowing the debtor to avoid the unsecured portion of the creditor's lien. *In re Burba*, 42 F.3d 1388 (6th Cir. 1994); *In re Perry*, 337 B.R. 649 (Bankr. N.D.Ohio 2005). This process of bifurcating a claim is commonly referred to as cramdown.

As argued by the Creditor, however, § 1322(b)(2) prohibits modification of a creditor's claim when the claim is "secured only by a security interest in real property that is the debtor's principal residence." In *Nobelman v. American Savings Bank (In re Nobelman)*, Justice Stevens, in his concurring decision, explained the policy basis for the antimodification clause of § 1322(b)(2): "favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market." 508 U.S. 324, 332, 113 S.Ct. 2106, 2111-12, 124 L.Ed.2d 228 (1993). Once the anitmodification clause of § 1322(b)(2) is determined to be applicable, bifurcation of a creditor's claim under § 506(a) is no longer permitted. As a result, a secured claim filed by a creditor must be treated as fully secured, the effect of which is to require a Chapter 13 debtor to pay the full amount of the creditor's claim, regardless of the underlying value of the collateral. 11 U.S.C. § 1325(a)(5)(B)(ii) (value of any property to be distributed under the plan on account of the secured claim cannot be less than the allowed amount of the claim). Additionally, a creditor holding such a claim is not subject to having their lien stripped down to the value of the collateral. 11 U.S.C. § 1325(a)(5)(B)(i)(I) (requiring that secured creditor retain the lien securing their claim).

Fitting with the antimodification clause of § 1322(b)(2), there is no dispute in this matter that, at the time they filed their petition for bankruptcy relief, the mortgage held by the Creditor was secured against only one parcel of real property – this being the property located at located at 11750 Eckel Junction Road – and that this property constituted the Debtors' principal residence. Outwardly,

Page 5

Kevin & Tracee Baker
Case No. 07-35228

therefore, the Debtors' proposed plan of reorganization, which seeks to bifurcate the Creditor's secured claim, contravenes § 1322(b)(2)'s mandate against such treatment.

It is the Debtors' position, however, that the Creditor is not entitled to the protections of § 1322(b)(2)'s antimodification clause because the Creditor's mortgage was, at its inception, secured against two properties: (1) the Debtors' current residence, at 11750 Eckel Junction Road; and (2) a property formerly owned by the Debtors located at 208 West 7th Street. It was explained that this situation arose because the Creditor's mortgage was provided by the Debtors as security for a "bridge loan."[1] Under this arrangement, the Creditor provided financing to enable the Debtors to purchase their current residence on Eckel Junction Road while the Debtors simultaneously went about the process of selling their former residence on West 7th Street. In response, the Creditor maintains that the Court should ignore this prepetition condition and consider only the status of the mortgage as it existed on the date the Debtors filed their bankruptcy petition.

Section 1322(b)(2) does not explicitly specify when a secured creditor's status is to be determined for purposes of applying the provision's antimodification clause. A divergence of opinion has arisen as a result. Conforming to the Debtors' view, some courts have found that the date of the prepetition transaction between the Parties – normally, when the loan agreement is executed – should constitute the salient event. *Id.* at * 5; *In re Williamson*, 387 B.R. 914, 920 (Bankr. M.D.Ga. 2008); *In re Smart*, 214 B.R. 63, 67 (Bankr. D.Conn.1997). The reasoning for this position is based

---

[1] A bridge loan is a type of short-term loan pending the arrangement of larger or longer-term financing. Typically, in a consumer real estate transaction, the consumer is purchasing a new residence and plans to make a down payment with the proceeds from the sale of a currently owned home. The currently owned home will not close until after the close of the new residence. A bridge loan allows the buyer to take equity out of the current home and use it as down payment on the new residence, with the expectation that the current home will close within a short time frame and the bridge loan will be repaid. http://en.wikipedia.org/wiki/Bridge_loan.

Page 6

Kevin & Tracee Baker
Case No. 07-35228

largely on the concern that a contrary reading could lead to debtor manipulation. That is, if a date other than the transaction date were utilized, debtors could seek to nullify the application of the antimodification clause by subsequently modifying the use of their property.

For example, "a debtor could easily sidestep the . . . home mortgage exception by adding a second living unit to the property on the eve of the commencement of his Chapter 13 proceeding." *In re Bulson*, 327 B.R. 830, 846 (Bankr. W.D.Mich. 2005). Or, as also observed, a homeowner poised to file for protection under Chapter 13 could seek temporary tenants prior to their filing to negate the application of § 1322(b)(2)'s antimodification clause. *In re Guilbert*, 176 B.R. 302, 305 (D.R.I.1995). Such concerns were well summarized in the case of in *In re Smart*:

> a lender supplying financing on an owner-occupied single-family home would be assured that its rights under the subject mortgage could not be modified through bifurcation in a future Chapter 13 case involving its borrowers. By contrast, a construction which makes the petition date (or motion decision date) the status determination date injects additional creditor risk into the mortgage loan transaction by creating the opportunity for debtors to manipulate their place of principal residence after completion of the mortgage transaction and prior to (or during) their Chapter 13 case, thereby "bootstrapping" modification of a mortgage that was taken in reliance upon the security serving as the principal residence.

*Id.* at 68.

The majority of courts, however, have held that the critical date for deciding whether a creditor qualifies for protection under the antimodification clause is the date the petition is filed. *See, e.g., In re Howard*, 220 B.R. 716, 718 (Bankr. S.D.Ga.1998); *In re Lebrun*, 185 B.R. 665, 666 (Bankr. D.Mass.1995); *In re Wetherbee*, 164 B.R. 212, 215 (Bankr. D.N.H. 1994); *In re Churchill*, 150 B.R. 288, 289 (Bankr. D.Me.1993). *See also* 2 K. Lundin, Chapter 13 Bankruptcy § 121.2 at 121-3-121-9 (3d ed. 2000) (collecting cases). From strictly a policy perspective, this approach has ironically found favor with some courts for the same overall reason just noted above – the potential

Page 7

Kevin & Tracee Baker
Case No. 07-35228

for a party to manipulate the application of the antimodification clause. The difference here being, failure to consider the petition date could lead to creditor manipulation. *In re Dinsmore*, 141 B.R. 499, 505-06 (Bankr. W.D.Mich. 1992). Specifically, utilizing the petition date was seen as a way to prevent creditors from disavowing, on a postpetition basis, a security interest in property not constituting a debtor's principal residence so as to gain the protections of § 1322(b)(2)'s antimodification clause. As explained in the case of *In re Howard*:

> The critical date for deciding whether a creditor qualifies for section 1322(b)(2) protection is the date that the petition is filed. This rule discourages creditors from disclaiming security interests post-petition in order to gain protection from modification of their claims under section 1322(b)(2). This limitation on modification was intended to protect the traditional home mortgage lender. A creditor's post-petition actions should not allow it to benefit from this narrow exception to a debtor's right to restructure his debts.

220 B.R. 716, 718 (Bankr. S.D.Ga.1998) (internal quotations omitted).

Beyond this policy reason, however, courts looking to the petition date as the critical date for determining the application of the antimodification clause, have relied upon the specific language of the statute. For example, while it is acknowledged that § 1332(b)(2) lacks explicit reference to its timing, the use of the word "claim" within the antimodification clause has been held to signify that the petition date should be the Court's focus, since a "claim" in "bankruptcy arises at the date of the filing of the petition." *In re Wetherbee*, 164 B.R. 212, 215 (Bankr. D.N.H.1994). Also from a temporal standpoint, it has been observed that, looking to the circumstances as they exist at the time the petition is filed, conforms to the provision's use of the present tense "is" – with the antimodification clause providing "other than a claim secured only by a security interest in real property that *is* the debtor's principal residence[.]" (emphasis added). *In re Churchill*, 150 B.R. 288, 289 (Bankr. D. Me. 1993).

Page 8

On whole, given those points just noted above, and in the absence of specific statutory language to the contrary, the Court finds it impossible to ignore the petition date when applying § 1332(b)(2)'s antimodification clause. In this way, this Court has previously noted that, unless directed otherwise, it is a basic facet of bankruptcy law that matters are normally gaged from the date the petition for relief is filed. *In re Haar*, 360 B.R. 759, 766 (Bankr. N.D.Ohio 2007). Notwithstanding, this does not mean the agreement underlying the parties' transaction is not relevant. To the contrary, the antimodification clause of § 1322(b)(2) specifically gives effect to the underlying agreement by its utilization of the term "security interest" which the Bankruptcy Code defines as a "lien created by agreement." 11 U.S.C. § 101(51). Similarly, the Supreme Court noted in *Nobelman v. American Savings Bank* that the "rights" protected by § 1322(b)(2) "are reflected in the relevant mortgage instruments, which are enforceable under [state] law." 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

In this Court's view, therefore, temporal matters under § 1322(b)(2) require a type of hybrid approach, whereby both the circumstances as they exist on the petition date as well as the underlying agreement must be considered. Specifically, factual findings under § 1322(b)(2) should be made by reference to the status of the parties' agreement, including any amendments, as it exists on the petition date. This was the approach adopted in the previously cited case of *In re Howard*, in which it was concluded that "there is no need to look beyond the language of the agreement as it existed between Creditor and Debtor at the time of the filing of the petition." 220 B.R. at 718. *See also In re Bosch*, 287 B.R. 222, 227 (Bankr. E.D.Mo. 2002).

From a policy perspective, this approach has the benefit of addressing the dual concerns, as outlined above, of creditors and debtors attempting to manipulate the application of the antimodification clause. First, consideration of the petition date will make it impossible for creditors to unilaterally disavow, on a postpetition basis, a security interest in nonresidential property for the purpose of gaining the protections of the antimodification clause. Conversely, looking also to the

Page 9

loan agreement will afford creditors the benefit of their bargain by preventing debtors from later modifying the use of their property for the purpose of denying a creditor the protections of the antimodification clause.

Looking now at the facts in this light, the evidence shows that, at the time the loan agreement between the Parties was executed, the Creditor held a security interest in two parcels of property: the Debtors' property at 11750 Eckel Junction Road; and their property at 208 West 7th Street. Once more, at the time the Debtors filed for bankruptcy protection, the mortgage held by the Creditor continued to reflect a secured interest in these two properties. Thus, if one were to afford a strict reading to the Parties' mortgage, the position advocated by the Debtors would be correct: at the time they filed for bankruptcy, the Creditor's claim against them would have been secured by something more than just an interest in their principal residence. As a result, the antimodification clause of § 1322(b)(2) would be inapplicable as by definition only one of the Debtors' parcels of real property could have constituted their primary residence. Yet, the reality concerning the Creditor's mortgage is different.

At the time the Debtors filed for bankruptcy protection, the Creditor's mortgage was secured against only a single parcel of real estate, that being the Eckel Road property which then and now constitutes the Debtors' principal residence. This result, importantly, did not happen by happenstance, but instead was an integral part of the Parties' transaction. As earlier explained, the transaction between the Parties constituted a bridge loan whereby the Creditor agreed to extend credit so as to enable the Debtors to purchase a new home while the Debtors simultaneously went about the process of selling their old home.

The whole structure of the Parties' agreement, therefore, was to have the obligation secured by only a single parcel of real estate, that being the Debtors' Eckel Road property. Put differently, the security interest the Creditor held against the West 7th Street property was only a temporary facet

Page 10

of the Parties' agreement. In this regard, the 7th Street property did not even merit a legal description in the Creditor's mortgage.

Thus, it may be fairly stated that, at the time the Debtors filed for bankruptcy relief, their mortgage agreement with the Creditor only encompassed, as intended, the Eckel Road property, not the 7th Street property. Under these conditions, the Court will not give the term "principal residence," as used in the antimodification clause, a strict reading by extending it to include a parcel of property that was never meant to be a lasting part of the Parties' security arrangement. To hold otherwise, would go contrary to the provision's very purpose: to encourage the flow of capital into the home lending market by protecting creditors making such loans.

Accordingly, for these reasons, the Court finds that the Creditor's mortgage, although originally secured against two parcels of real property, qualifies for the protections of § 1322(b)(2)'s antimodification clause because, as was agreed upon by the Parties, only the Debtors' "principal residence" operated as security at the time the Debtors filed for bankruptcy relief. Resultantly, the Debtors are not entitled, in their plan of reorganization, to modify the terms of the Creditor's secured claim. The Creditor's objection to confirmation will, therefore, be Sustained.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Kevin & Tracee Baker
Case No. 07-35228

Accordingly, it is

**ORDERED** that the Objection to Confirmation of the Debtors' Amended Plan Filed by Creditor, Wells Fargo Financial Services Inc., be, and is hereby, SUSTAINED.

*IT IS FURTHER ORDERED* that a Continued Hearing on Confirmation of Chapter 13 Plan be, and is hereby, scheduled for Wednesday, September 24, 2008, at 3:00 P.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.

Dated: September 10, 2008

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 12

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Decision and Order has been sent this 10th day of September, 2008 by ordinary US Mail Service to the following parties:

Richard J Szczepaniak
PO Box 501
Toledo, OH 43697-0501

Kevin W. Baker
11750 Eckel Junction Road
Perrysburg, OH 43551

Tracee J. Baker
11750 Eckel Junction Road
Perrysburg, OH 43551

Stephen D Miles
18 W Monument Ave
Dayton, OH 45402

Ernest D Ducey
P.O. Box 525
Toledo, OH 43697-0525

John P. Gustafson
Office of the Chapter 13 Trustee
316 N. Michigan St.
#501
Toledo, OH 43604

_____
Deputy Clerk